The libel in this case was for a divorce per causa adulterii,
and it specified the time and place. The plea was as follows: —
And the said Abel Jeans, by c. comes and defends, c., and says, actio non, c., because he says, that the said Priscilla Jeans, after the said supposed transgressions in the said petition alledged, she the said Priscilla has admitted the said Abel Jeans, the respondent, into conjugal society or embraces, after she the, said Priscilla knew of the said acts of adultery. Wherefore, the said Abel Jeans prays judgment, c., whether the said Priscilla ought to have and maintain her suit aforesaid, thereof against him, c.
The adultery was fully made out; the subsequent return of the wife to conjugal society and embraces of her husband on his promises of amendment, and the proof justified strong suspicions, if it did not amount to clear conviction, that he had violated his promises and been guilty of a subsequent repetition of the crime. The questions were, whether subsequent adultery would be a waiver of the condonation of adultery; and whether such subsequent acts of adultery could be proved without being replied to the plea of condonation. The "act regulating divorces" (8 Del. Laws 148,) gives to the Superior Court "the sole cognizance of granting divorces, where either of the parties had a former wife or husband living at the time of solemnizing the second marriage; or where either of the parties shall be wilfully absent from the other, with the intention of abandonment, three years; or incase of adultery; or where the male party is `actually impotent at the time of the marriage; or in case of extreme *Page 39 
cruelty." The 8th section provides "that in any action or suit commenced in the said court for a divorce for a cause of adultery, if the; defendant shall alledge and prove, that the plaintiff has been guilty of the like crime, or has admitted the defendant intoconjugal society or embraces, after he or she knew of the criminalfact, or that the complainant (if the husband,) allowed of the wife's prostitution, or received hire therefor, or exposed his wife to lewd company, whereby she became ensnared to the crime aforesaid, it shall be a good defence, and a perpetual bar against such action or suit."
J. A. Bayard, for petitioner. The doctrines of the English ecclesiastical courts on the subject of divorce for adultery, so fully matured by a series of the ablest decisions as to the modes of proceeding and rules of construction, were such as our legislature evidently intended to introduce by the exception contained in the act giving jurisdiction of the subject to this court. The provision amounts precisely to the English "condonation," which is forgiveness, arising from subsequent cohabitation. There can be no reason for the exception but on the idea of "forgiveness of the crime," and this cannot be reasonably inferred, except on the idea of reformation. I shall expect the court then, in the exercise of this new jurisdiction, to govern it by those enlightened rules which, in the ecclesiastical courts have grown up into a system, which is equally applicable to similar cases here, and will tend equally to the administration of justice. I shall contend that under our act, as well as in those courts, — 1st. Condonation is conditional, and must be on full knowledge of the crime; 2d. That as to the wife, the court will require much stricter proof of the condonation than in the case of the husband, because she is under his power and control; 3d. That as the law allows of long forbearance on the part of the wife, before she acts on her suspicious of crime, her knowledge must be fully shown; and 4th. That as regards condonation, if you show subsequent to it circumstances that will create a "violent suspicion "of a repetition of the offence, the condonation is waived. Condonation is a conditional forgiveness; a repetition of the adultery is a forfeiture or waiver of the condonation, and the subsequent adultery may be established on less proof than would be required as the foundation of an original decree of divorce. 2 Eng. Ecc. Rep. 170, Best
vs. Best; 3 ditto 305-6, Astley vs. Astley;Idem 341, Beebee, vs. Beebee; Idem 310, Durant
vs. Durant; 5 ditto 136, Turton vs. Turton;Idem 238, 1 ditto 203.
Gray, for respondent. The granting of divorces is, under any circumstances, of doubtful expediency, and the court will not strain a construction to extend the practice. They have a sure and safe guide in the act which gives them jurisdiction; if they depart from *Page 40 
this and enter into this so much lauded, but complex system of the ecclesiastical courts, there is no telling where it may lead us. Did the legislature intend to introduce into the practice of our courts any such system? It is not necessarily applicable to us, and should not be applied unless it was the plain intention of the legislature, in conferring jurisdiction, to have it regulated also by that system. What evidence is there of this intention? The word condonation does not appear in the act: the idea of forgiveness of the crime, either absolute or conditional, is not distinctly held out. Adultery is recognized as a proper cause of divorce; but it is distinctly provided, that if the complainant shall, after knowledge of the adultery, admit her husband into conjugal society or embraces, it shall be a good defence and a perpetual bar against her action. There is no waiver here, no conditional forgiveness to be resumed or forfeited by subsequent misconduct, it is a perpetual bar. If, therefore, we have established the knowledge of the wife of her husband's infidelity, and that she subsequently received him into conjugal society or embraces, she is not entitled to a divorce for this offence. And how unjust it is to set up subsequent acts of which we have no notice, and mere suspicions, which we cannot be prepared to rebut, to revive the original offence and remove this perpetual bar.
R. H. Bayard for respondent. The principle of condonation growing out of the civil law, has nothing to do with our system of divorce. Our statute has otherwise provided. The common law is composed of the general customs of the laud; customs of particular places; and the customs of particular courts; to wit, the civil and canon laws. 1 Blac. Com. 67, 83, c. That portion of common law never did or could extend to this country, p. 87. The colonies do not carry with them that part of the common law which refers to the jurisdiction of the spiritual courts. The legislature exercised the power of divorce until 1832, when they by statute gave it to this court. Every statute is either declaratory of the old law or introductory of new; if introductory, the principle is, that it is to be applied to and interwoven with the laws of the country to which it applies, and not refer itself to the laws or customs of another country. The idea then of Mr. Bayard, that the legislature intended to introduce the principles and practice of the English ecclesiastical courts on this subject, totally fails him; as a matter of fact it was impossible. The eccleiastical reports were not published in this country until 1832, until when, neither lawyers nor judges knew any thing about this system. The term condonation and its meaning were unknown among us. Could the legislature have designed to introduce a system of which they could know nothing? They have given jurisdiction in certain *Page 41 
cases; adultery is one; if they had stopped there, the argument from analogy would have been very strong, that some such plea as the English condonation or waiver should be allowed, viewing the English cases as lights, but not as authority. But here, the legislature have specified not only the offence, but the defence; if the party complaining shall have admitted the other into conjugal society or embraces, after knowledge of the crime, it shall be a good defence and aperpetual bar. And it is remarkable, that the legislature selected this case of adultery from the other cases to interpose this bar. Yet the plaintiff asks the court to strike out this perpetual bar, and put in the word condonation, or persumed pardon, or conditional pardon. Has the court the right thus to change an act of assembly?
We are not bound to notice any allegation in the libel that is not specific as to time and place and person; it must have at least such sufficient certainty in all these respects, as to warn the party what he has to defend himself against. Or, as adultery may be presumed from circumstances, if the person be not named, the time, place, or other circumstances must be set out sufficient to give the party notice what he is to defend himself against. Then to what does the doctrine of the other side lead us? A crime is charged with sufficient certainty of time and place. We show that subsequently to that time the complainant, with full knowledge of the fact, has been living with the defendant, admitting him to conjugal society and embraces, and we rely on this as a defence provided for us by the express terms of the law. Immediately they abandon the old charge, set about proving other offences, or mere suspicions of offences, of which we have had no notice, and expect this not only to remove the perpetual bar, but even insist, as one of the doctrines of the ecclesiastical courts, that these charges need not be fully proved. It is sufficient to establish a suspicion of their truth. The doctrine is at war not only with the act of assembly, but with the immutable principles of justice and right.
J. A. Bayard in reply. I admit that the jurisdiction of this court over cases of divorce, is derived from the act of assembly. Nor do I expect that this court will introduce the whole body of the civil law, or the entire practice of the ecclesiastical courts; but as jurisdiction of the same kind has been long exercised and matured in those courts, if great and leading principles are to be found in their decisions equally applicable to us, and which may aid our courts in their exercise of this new jurisdiction, I can have no doubt that the court will look to them, not as binding authority, but as great lights and sound guides in the administration of the law of divorce. I admit *Page 42 
that according to the English cases, it is necessary for the libel to state the adultery with such certainty as to apprise the defendant of the fact to be relied on, but I deny that the waiver of condonation by subsequent adultery, need be either set out or proved with the same certainty as the original charge. In New York, their law is similar to ours, and the courts there have resorted to the ecclesiastical cases for principles to guide them. Kent's Com. 84. The waiver of condonation is a leading principle of the doctrine of divorce. Does our act of assembly alter it? Is it precluded by being called a perpetual bar? Any defence is a bar; and, if not avoided, a perpetual bar. The statute of limitations is a perpetual bar, yet it may be waived. The doctrine contended for on the other side is, that the wife shall abandon her husband the moment she knows of his infidelity, or bar herself from all the rights growing out of his criminal conduct. It cannot be; it would be against the feelings of human nature. A wife cannot be expected thus promptly to leave her children and her husband. The intention of the legislature was to present by the exception precisely that which, by the principles of the ecclesiastical law is called condonation, which in reason is founded on a conditional forgiveness, and waived by a breach of the condition. And if we are to look only to the words of the act for this principle, it cannot apply to any other case than that of adultery; and there can be no such thing as a condonation of cruelty, absence, c. The reason of the thing forces us into the principles of the ecclesiastical courts, and shows that the legislature meant by a return to conjugal society, the same thing with those courts, a condonation. I did not intend to cite those cases as authority, but simply because the same general principles which have been found there to apply to this subject, must necessarily apply to it here: for the principles of truth and justice are universal. One of those principles is, that a subsequent adultery is a waiver or forfeiture of the condonation; and that it may be established on slighter proof than the original crime.
A majority of the court were of opinion that the exception in the eighth section of this act did not amount to an absolute bar, but might be waived. That the legislature meant only to introduce an equivalent to the principle of condonation or forgiveness, by providing that a return to conjugal society should be a defence. They were also of opinion that subsequent acts of adultery had been proved, but as these subsequent acts were not replied to the plea of condonation, and no notice given to the respondent that they were to be proved, and this being a case of first impression, they directed the cause to stand over, with leave to the libellant to amend the pleadings, so far as to introduce specific charges of the subsequent acts of adultery. *Page 43